

# Fourth Court of Appeals
## San Antonio, Texas

### MEMORANDUM OPINION

No. 04-13-00904-CV

**IN THE INTEREST OF R.L.R.R.**, M.C.M., J.D.S. and G.Z.S.

From the 408th Judicial District Court, Bexar County, Texas
Trial Court No. 2013-PA-00325
Honorable Charles E. Montemayor, Judge Presiding

Opinion by:  Sandee Bryan Marion, Justice

Sitting:  Catherine Stone, Chief Justice
Sandee Bryan Marion, Justice
Luz Elena D. Chapa, Justice

Delivered and Filed:  April 30, 2014

AFFIRMED

The Department of Family and Protective Services ("the Department") filed its petition to terminate the parental rights of the mother of the four subject children, and of the alleged fathers of the children. This is an appeal by two of the fathers from the trial court's order terminating their parental rights. We affirm the order as to both.

### PABLO B.'S APPEAL

Pablo B. is the father of two of the children, GZS and JDS. The trial court terminated Pablo's parental rights as to GZS because he failed to timely file an admission of paternity or a counterclaim for paternity or for voluntary paternity under Family Code Chapter 160 before the final hearing. The trial court terminated Pablo's parental rights as to both GZS and JDS for

constructive abandonment and failure to comply with the court's order. The court also found termination to be in the children's best interest.

Pablo's court-appointed attorney filed a brief containing a professional evaluation of the record and demonstrating that there are no arguable grounds to be advanced. Counsel concludes that the appeal is without merit. The brief meets the requirements of *Anders v. California*, 386 U.S. 738 (1967). *See In re R.R.*, No. 04-03-00096-CV, 2003 WL 21157944, at * 4 (Tex. App.—San Antonio May 21, 2003, no pet.) (applying *Anders* procedure in appeal from termination of parental rights), *disp. on merits*, 2003 WL 22080522 (Tex. App.—San Antonio Sept. 10, 2003, no pet.) (mem. op.). Counsel provided Pablo with a copy of the brief. Pablo was informed of his right to review the record and advised of his right to file a pro se brief. Pablo has not filed a brief.

After reviewing the record and counsel's brief, we agree that Pablo's appeal is frivolous and without merit.

### RAYMOND R.'S APPEAL

Raymond is the father of one of the children, RLRR, who was born in 2004 and is the oldest of the four children. The trial court terminated Raymond's parental rights on the grounds that he had his parental rights terminated with respect to another child because he placed that child with other persons or in circumstances that endangered the child; he constructively abandoned RLRR who had been in the managing conservatorship of the Department; and he failed to comply with a court order. The trial court also found that termination was in RLRR's best interest. On appeal, Raymond challenges the sufficiency of the evidence in support of the best interest finding.

There is a strong presumption that keeping a child with a parent is in the child's best interest. *In re R.R.*, 209 S.W.3d 112, 116 (Tex. 2006). In determining whether termination of parental rights is in a child's best interest, courts may apply the non-exhaustive *Holley* factors to

shape their analysis. *Holley v. Adams*, 544 S.W.2d 367, 371-72 (Tex. 1976). These include, but are not limited to, (1) the desires of the child, (2) the emotional and physical needs of the child now and in the future, (3) the emotional and physical danger to the child now and in the future, (4) the parental abilities of the individuals seeking custody, (5) the programs available to assist these individuals to promote the best interest of the child, (6) the plans for the child by these individuals or by the agency seeking custody, (7) the stability of the home or proposed placement, (8) the acts or omissions of the parent that may indicate that the existing parent-child relationship is not a proper one, and (9) any excuse for the acts or omissions of the parent. *Id.*

These factors are not exhaustive, and "[t]he absence of evidence about some of [the factors] would not preclude a factfinder from reasonably forming a strong conviction or belief that termination is in the child's best interest." *In re C.H.*, 89 S.W.3d 17, 27 (Tex. 2002). Evidence that proves one or more statutory grounds for termination may also constitute evidence illustrating that termination is in the child's best interest. *Id.* at 28 (holding same evidence may be probative of both section 161.001(1) grounds and best interest, but such evidence does not relieve the State of its burden to prove best interest). A best-interest analysis may consider circumstantial evidence, subjective factors, and the totality of the evidence as well as the direct evidence. *In re E.D.*, 419 S.W.3d 615, 620 (Tex. App.—San Antonio 2013, pet. denied). A trier of fact may measure a parent's future conduct by his past conduct and determine whether termination of parental rights is in the child's best interest. *Id.*

On appeal, Raymond contends the evidence on *Holley* factors one, two, three, and four is legally and factually insufficient. An order terminating parental rights requires clear and convincing evidence. *In re J.F.C.*, 96 S.W.3d 256, 263 (Tex. 2002). The Family Code defines clear and convincing evidence as "the measure or degree of proof that will produce in the mind of

the trier of fact a firm belief or conviction as to the truth of the allegations sought to be established." TEX. FAM. CODE ANN. § 101.007 (West 2014); *see J.F.C.*, 96 S.W.3d at 264. We strictly construe involuntary termination statutes in favor of the parent. *In re E.R.*, 385 S.W.3d 552, 563 (Tex. 2012). We review the legal and factual sufficiency of the evidence in support of the best interest finding under the well-established standards of review. *See J.F.C.*, 96 S.W.3d at 266-67 (stating legal and factual sufficiency standards).

Raymond's attorney appeared on his behalf at the termination hearing, but Raymond did not. Two witnesses testified relevant to Raymond: Allison Shoot, the Department caseworker; and the mother of the four children, Stephanie S.

Shoot testified the Department's case went as far back as 2007, and legal proceedings began as far back as 2011. She said Raymond did not maintain regular visitation with his son. However, she admitted there were no reports of any improper activity during Raymond's occasional visits. Shoot also admitted she has not observed Raymond with RLRR; therefore, she had no opinion on whether Raymond had a bond with his son or had any parenting skills. She said RLRR is currently with his maternal grandfather who wishes to adopt. When asked generally why she believed termination was in the children's best interest, Shoot responded the children are in safe and stable homes—something she did not believe the parents could provide—and the children were happy in their placement. She believed the children wanted to stay in their respective placements. She agreed the proceedings have been "a real strain" on the children, especially RLRR who has been moved "many, many times."

Shoot said Raymond was not involved in the abuse that resulted in the initial removal. She stated she had asked Raymond to "go to intake at Family Violence Prevention and he did not show up." She said Raymond has not completed his service plan, or completed even a substantial

amount of the plan. She said Raymond had given her a paycheck stub in August,[1] but since that time she was not aware of steady employment or safe housing. She said Raymond had given her his boss's telephone number, which was not in service. She also said Raymond indicated to her that he did not have his own telephone. Although ordered to pay child support, she did not believe Raymond had made any payments; however, she had not verified his lack of payments.

Shoot testified Raymond has engaged in criminal conduct during the pendency of the case, and he was in a "violent street gang." When asked specifically why she believed terminating Raymond's parental rights was in RLRR's best interest, Shoot responded she did not believe it was safe and she did not think Raymond had proven he was changing or could provide RLRR with a safe and stable home. She did not believe more time would make any difference. According to Shoot, Raymond had engaged in conduct detrimental to the child. However, Shoot also said Raymond did not appear to pose a threat or danger to RLRR. Out of a possible twenty visits over a ten-month period, Raymond visited his son only four times, the last time four or five months before the termination hearing. She did not believe there was a "substantial bond" between Raymond and his son.

Stephanie S. testified she had a "strong" bond with her children, but had never had the opportunity to view Raymond with RLRR. When asked if she was aware of any bond between Raymond and her son, she replied "As far as I'm concerned, I know about previous visits in the [D]epartment, but I'm not aware or have never been around any visits."

"Our duty is to review whether a reasonable factfinder could have formed a firm conviction or belief that termination was in the children's best interest, even if some evidence points the other way." *In re O.N.H.*, 401 S.W.3d 681, 688 (Tex. App.—San Antonio 2013, no pet.). Viewing the

---

[1] The termination hearing commenced in December 2013.

evidence in the light most favorable to the judgment, we conclude the trial court could have formed the firm belief or conviction that termination was in RLRR's best interest. We have also examined the evidence and found that not a single disputed point of evidence is so controverted that a reasonable factfinder could not credit it. We therefore conclude the evidence is factually sufficient to support the best interest finding.

## CONCLUSION

The judgment of the trial court is affirmed as to both Pablo B. and Raymond R. We GRANT Pablo B.'s counsel's motion to withdraw. *Nichols v. State*, 954 S.W.2d 83, 86 (Tex. App.—San Antonio 1997, no pet.); *Bruns v. State*, 924 S.W.2d 176, 177 n.1 (Tex. App.—San Antonio 1996, no pet.).

Sandee Bryan Marion, Justice